IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JESSE A. LAUW, )
    Plaintiff, )
     )
    v. ) 2: 13-cv-1132
     )
COMMISSIONER OF )
SOCIAL SECURITY, )
    Defendant. )

MEMORANDUM and ORDER

Mitchell, M.J. :

Presently before the Court for disposition are cross motions for summary judgment. For the reasons set forth below, the plaintiff's motion (ECF No. 11) will be denied, the defendant's motion (ECF No. 13) will be granted and the decision of the Commissioner will be affirmed.

On August 6, 2013, Jesse A. Lauw by his counsel, filed a complaint pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. §405(g) for review of the Commissioner's final determination disallowing his claim for Supplemental Security Income benefits under Sections 1614 and 1631 of the Act, as amended, 42 U.S.C. §1381 cf.

The instant application for Supplemental Security Income Benefits was filed on October 1, 2009 (R.152). On April 26, 2010, benefits were denied (R.80-84). On November 26, 2010, the plaintiff requested a hearing (R.85) and pursuant to that request a hearing was held on March 8, 2012 (R.52-70). In a decision filed on April 17, 2012, an Administrative Law Judge denied benefits (R.13-31), and on April 30, 2012, the plaintiff requested reconsideration of that determination (R.9-11). On June 3, 2013, the Appeals Council affirmed the prior determination (R.1-3). The instant complaint was filed on August 6, 2013.

In reviewing an administrative determination of the Commissioner, the question before any court is whether there is substantial evidence in the agency record to support the findings of the Commissioner that the plaintiff failed to sustain his/her burden of demonstrating that he/she was disabled within the meaning of the Social Security Act. Richardson v. Perales, 402 U.S. 389 (1971); Adorno v. Shalala, 40 F.3d 43 (3d Cir. 1994).

It is provided in 42 U.S.C. Section 405(g) that:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing. The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive....

Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Johnson v. Commissioner. 529 F.3d 198 (3d Cir.2008) and the court may not set aside a decision supported by substantial evidence. Hartranft v. Apfel, 181 F.3d 358 (3d Cir.1999)

The purpose of the Supplemental Security Income Program is to provide additional income to persons of limited resources who are aged, blind or disabled persons. 42 U.S.C. §1381; Chalmers v. Shalala, 23 F. 3d 752 (3d Cir. 1994). To be eligible for such benefits, an individual's income must not exceed a certain established maximum and he/she must fulfill certain eligibility requirements.

As set forth in 20 C.F.R. § 416.905(a) disability is defined as:

> he inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

In addition, a person will be considered disabled if he/she is

2

> (a) ... permanently and totally disabled as defined under a State plan approved under title XIV or XVI of the Social Security Act, as in effect for October 1972; (b) ... received aid under the State plan ... for the month of December 1973 and for at least one month prior to July 1973; and (c) ... continue[s] to be disabled as defined under the State plan.

20 C.F.R. § 416.907.

A physical or mental impairment is defined in 20 C.F.R. §416.908 as an:

> impairment [which] result[s] from anatomical, physiological, or psychological abnormalities which [are demonstrated] by medically acceptable clinical and laboratory diagnostic techniques.

For purposes of determining whether or not the plaintiff met the eligibility requirements, certain evidence was considered by the Commissioner.

At the hearing held on March 8, 2012 (R.52-70), the plaintiff appeared with counsel (R.54) and testified that he earned a GED (R.61) and was receiving Public Assistance (R.63). He also testified that he experiences diabetes, hypertension, depression, rheumatoid arthritis, vascular neuropathy and breathing problems for which he takes medication (R.55-60); that he has a thirty-three year history of heroin, cocaine and alcohol dependency but has stopped using heroin and cocaine (R.60); that he can walk for about a half hour, occasionally lift thirty pounds and frequently lift ten pounds, and is able to sit or stand for a few hours (R.62-63) and that when he is not in pain he is able to perform household chores (R.66).

At the hearing a vocational expert was called upon to testify (R.67-69). The witness testified that the plaintiff previously had worked as a hanger/sorter at a thrift store for a short period of time (R.68) and that he did not deem that work as relevant (R.68). When asked to assume an individual of the plaintiff's age, education and work experience who could perform medium work he replied that there were a large number of occupations such an individual could

3

perform (R.68). He further testified that if the individual had to understand, remember and carry out simple instruction and interact with coworkers there were a large number of jobs available in the national economy (R.68). However, if the individual needed to be isolated from the public and only occasionally interact with supervisors and other workers there would be a more limited number of jobs available (R.69). The witness also testified that any of these jobs would require regular attendance (R.69).

In addition, certain other evidence was considered.

In reports of physical and mental health status during the period from October 31, 2008 through April 9, 2009, hypertension and diabetes were diagnosed as well as long term heroin, cocaine and alcohol abuse (R.205-220).

The plaintiff was treated by Douglas A. Dunham, D.O. between August 24, 2007 and November 6, 2009. Diagnoses of diabetes, peripheral neuropathy, arthritis, hypertension, depression, substance abuse in remission and antisocial personality disorder were made (R.221-227).

The plaintiff was treated at the Chartiers MH/MR Center between August 25, 2009 and November 19, 2009 where an adjustment disorder and depression with substance abuse in remission and an antisocial personality disorder were diagnosed. Medication was prescribed as well as NA attendance (R.228-237).

In a report of a consultative physical examination conducted on March 24, 2010, Dr. Antonio Riccelli noted the absence of any lifting, standing, walking or sitting limitations. He was diagnosed with diabetes, hypertension and depression (R.239-244).

In a residual mental functional capacity assessment completed on April 23, 2010, Emanuel Schnepp, Ph.D. concluded that the plaintiff's statements were only partially credible

and that he "is able to meet the basic mental demands of competitive work on a sustained basis …" Depression, antisocial personality disorder and polysubstance abuse reported to be in remission were also noted (R.249-265).

In a residual functional capacity assessment completed on April 23, 2010, it is noted that the plaintiff could occasionally lift fifty pounds, frequently lift twenty-five pounds and stand, walk or sit for about six hours (R.73-79).

The plaintiff was treated by Douglas Dunham, D.O. between November 7, 2009 and March 19, 2012 for hypertension, diabetes and insomnia. It was noted that the plaintiff could stand or walk for two hours, sit for three hours, frequently lift up to ten pounds and occasionally lift up to twenty pounds. The plaintiff would occasionally require additional breaks during a workday in excess of the usual 15 minute morning and afternoon break and the 30 minute lunchbreak, due to increased symptoms of fatigue, circulation issues, headaches, and need to check blood sugar. Finally, it was noted that the plaintiff experiences approximately 6 bad days per month during which his symptoms are increased and he would not be able to complete an 8 hour work shift (R.266-287).

> Based on the evidence presented, the Commissioner concluded:
>
> The claimant has the following severe impairments: type II diabetes mellitus, hypertension and depression…
>
> The claimant has longstanding history of diabetes requiring medication management. However, there is no evidence of any polydipsia, polyuria, polyphagia, or hospital admissions for diabetic ketoacidosis or hyperosmolar state…
>
> There is no evidence of significant and persistent disorganization of motor function in two extremities resulting in sustained disturbance of gross and dexterous movements, or gait and station. There is no evidence of acidosis occurring at least on the average of once every two months…

The medical evidence reveals that the claimant's hypertension is sub-optimally controlled when he is not consistent with taking his medication regimen… However, there is no history of cardiovascular disease or other complication[s] from hypertension…

[T]he severity of the claimant's mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listings 12.04 … 12.08… and 12.09

Although the record documents a significant history of polysubstance dependence, there is no evidence of mental health treatment for depression prior to March 2009. The psychiatric evaluations during his incarceration in April 2009 identified his diagnoses as a depressive disorder, NOS and polysubstance dependence … The records indicated that he had no prior mental health treatment or admissions. The mental status examination findings revealed a depressed mood. His affect was neutral, however, his appearance was within normal limits. His speech was coherent and relevant. His recent memory was good but his remote memory was poor. His intelligence was normal. His judgment and insight were good…

The evidence demonstrates mild restriction in activities of daily living attributed to his depression… it appears that he is capable of performing basic household chores…

The claimant has moderate difficulties in social functioning given his history of polysubstance dependence and criminal history. Nevertheless, the evidence during the period under adjudication indicates that he is capable of communicating effectively…

He lives with his girlfriend and her grandchildren. Moreover, the residual functional capacity assessment makes accommodations for claimant's subjective reports of moodiness, isolation and limited patience by limiting his interactions with the public and co-workers.

The evidence demonstrates no more than moderate difficulties in maintaining concentration, persistence or pace…

After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work … In addition, the individual is able to understand, remember, and carry out simple instructions; make judgment on simple work decisions; respond to usual work settings and changes in work place settings but needs to be isolated from the public and have only occasional interaction with co-workers…

After the hearing, claimant's representative submitted a Physical Capacity Evaluation apparently signed by claimant's primary care physician, Douglas

Dunham on March 17, 2012. The physical limitations as described are significantly more restricted than the adopted residual functional capacity assessment. In fact, the stated limitations do not allow the claimant to sit, stand, or walk in any combination for a full 8-hour workday…

[T]he functional limitations identified in this Physical Capacity Evaluation have minimal probative [value] because they are based on the claimant's reports to his representative and signed off by Dr. Dunham. Moreover, the physical limitations reported on the Physical Capacity Evaluation form submitted post-hearing are not consistent with the patient's subjective reports and minimal clinical findings as documents in the accompanying Patient Progress Notes from January 2010 through March 1, 2012. Therefore, the undersigned accords very little weight to the physical limitations as identified.

Furthermore, his reported activities, in his written statements and at the hearing, do not substantiate the reported limitations in lifting, standing, walking, and sitting secondary to his diabetes complicated by peripheral neuropathy and arthritis…

Moreover, the claimant's significant history of polysubstance dependency, criminal history, and lack of work record also undermines his credibility. The claimant indicated that he stopped working in January 2006 because he went back to jail. The records from the Allegheny County Corrections Health Services confirm that he was incarcerated in October 2008 and again from [March] 2009 through [April] 2009…

The ALJ has incorporated the mental residual functional capacity assessment of the State Agency psychologist in the adopted RFC. The restrictions on the interactions with the [public] and co-workers accommodate the claimant's subjective reports of moodiness, isolation, and no patience. These additional restrictions also accommodate the diagnoses of record of an antisocial personality disorder as well as any residuals arising from his history of polysubstance dependence. The non-exertional limitations are consistent with the prior psychiatric diagnoses and the claimant's testimony that he is not presently receiving any mental health treatment. It is also consistent with his reports that he has been living with his girlfriend and interacts regularly with her two grandchildren.

In sum, the above residual functional capacity reasonably accommodates claimant's subjective reports of pain and fatigue consistent with the minimal objective findings and the functional assessments of the consultative disability examiner and the state agency psychologist.

The claimant has no past relevant work…

> The claimant has the equivalent of a high school education and is able to communicate in English…
>
> Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform…
>
> The claimant has not been under a disability … since October 1, 2009, the date the application was filed (R.18-30).

The record reflects that the plaintiff suffers from diabetes, hypertension and depression, all of which are subject to medical control. In addition, he has a considerable history of substance abuse. Nevertheless, his infirmities either individually or in combination do not render him disabled. For this reason, the conclusion of the Commissioner is supported by substantial evidence.

Summary judgment is appropriate where there are no material issues of fact in dispute and the movant is entitled to judgment as a matter of law. Lichtenstein v. UPMC, 691 F.3d 294, 300 (2012). The record demonstrates that there are no material issues of fact in dispute and as a matter of law, the determination of the Commissioner is supported by substantial evidence. Accordingly, the plaintiff's motion for summary judgment will be denied, the defendant's motion for summary judgment will be granted, and the decision of the Commissioner will be affirmed.

An appropriate order will be entered.

ORDER

AND NOW, this 4th day of March, 2014, for the reasons set forth in the foregoing Memorandum, IT IS ORDERED that the plaintiff's Motion for Summary Judgment (ECF No. 11) is DENIED, the defendant's Motion for Summary Judgment (ECF No. 13) is GRANTED and the decision of the Commissioner is AFFIRMED.

s/ Robert C. Mitchell
United States Magistrate Judge